## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

FRANK HEUSSER, SR., et al.,

                Plaintiffs,

  v.                                        3:07 - CV - 1660 (CSH)

KEVIN J. HALE, et al.,

                Defendants.

## <u>RULING ON DEFENDANTS' MOTION TO DISMISS</u>

<u>HAIGHT, Senior District Judge:</u>

Plaintiffs Franklyn Heusser, Sr., Franklyn Heusser, Jr., and Frank's LLC (collectively herein "Plaintiffs") have brought the present action against defendants Kevin J. Hale ("Hale") and the City of Ansonia ("the City" or "Ansonia") (collectively herein "Defendants") for the unlawful removal of Frank's Service Station from the City of Ansonia's Rotational Towing List ("RTL"), discriminatory refusal to reinstate that business to the list, and failure to accept the application of Frank's LLC to be placed on the list. Plaintiffs assert federal claims under the Constitution, and state law claims on the basis of pendent jurisdiction.

Pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Doc. #74. With respect to Plaintiffs' federal claims, Defendants first argue that Counts One and Two fail to set forth legally cognizable claims for First Amendment retaliation because the speech at issue is not related to a "matter of public concern." Moreover, Defendants contend that Plaintiffs'

Equal Protection claims, set forth in Counts Three, Four, and Nine, should be dismissed because they they set forth "class-of-one" claims, which are barred in the government employment context. Alternatively, Defendants maintain that these three counts set forth "selective prosecution" Equal Protection claims that are derivative of Plaintiffs' fatally flawed First Amendment claims. Defendants thus assert that the Equal Protection claims coalesce with the deficient First Amendment claims and should thus be dismissed.  Defendants further move for dismissal of  Count Nine in particular because that count fails to establish that there were other "similarly situated" individuals to plaintiff Frank's LLC.

Addressing Plaintiffs' state law claims,  Defendants seek dismissal of  Counts Five, Six, and Ten, alleging tortious interference with a business expectancy, on the ground that  those counts fail to allege the existence of a business relationship with a third party.   Lastly, Defendants argue that Plaintiffs have failed to set forth valid claims for negligent and intentional infliction of emotional distress in Counts Seven and Eight because Defendants' conduct, as alleged therein, is not sufficiently "outrageous" to sustain such claims.

Initially, the Court will examine whether Plaintiffs' federal claims survive Defendants' motion under Rule 12(b)(6) to dismiss them.  If Defendants' motion succeeds as to Plaintiffs' federal claims, the Court will then consider whether or not to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

I.      **FACTS**

A.      **Frank's Service Station**

Plaintiff Franklyn Heusser, Sr. is the owner and operator of the service station known as "Frank's Service Station,"  located at 142 Wakelee Avenue in Ansonia, Connecticut.   Doc. #65,

2

p. 1 (¶ 1); p. 3 (¶¶ 7- 8).   He has operated this business for the past forty years.  *Id.*, p. 3 (¶ 7).

Plaintiff Franklyn Heusser, Jr. is the son of  Heusser, Sr., and has worked for his father at Frank's

Service Station for the past ten years.  *Id.*, p. 3 (¶ 8).   As part of its business,  Frank's Service

Station sells gasoline, provides automobile maintenance, and offers  towing services for inoperable

automobiles and/or operators of vehicles who are unable to drive.  *Id.*, p. 1 (¶ 1); p. 3 (¶ 9).

Defendant Kevin Hale is the Chief of Police of the City of Ansonia.  *Id.*, p. 2 (¶ 4).   As part

of his position, Hale oversees Ansonia's Rotational Tow List ("RTL"), which is "a list of businesses

engaged in the towing of [abandoned and inoperable] automobiles, with those on the list taking turns

or alternating in towing vehicles" at Ansonia's request.[1]  *Id.*, p. 3 (¶ 10).   Hale  allegedly has the

"sole discretion and authority" to determine which businesses are allowed to be part of Ansonia's

RTL.  *Id.*, p. 2 (¶ 5).

For many years, Frank's Service Station appeared on the RTL, which generated a large

portion of the station's business by enabling Plaintiffs to tow vehicles at the request of the Ansonia

Police Department.  *Id.*, p. 3 (¶ 9).   Plaintiffs maintain that they  relied on the RTL as a guaranteed

source of revenue for Frank's Service Station.  *Id.*, p. 3 (¶ 10).

On September 20, 2007, Frank's Service Station was removed from the RTL based on the

arrests of Plaintiffs Heusser, Sr. and Jr.  *Id.*, p. 4 (¶ 12), and p. 5 (¶¶ 15-16); *see also* Doc. #74-1,

---

[1]The Court takes judicial notice that a municipal police department is authorized by Connecticut statute to arrange for the removal of motor vehicles within city limits under specified circumstances.  *See, e.g.*, Conn. Gen. Stat. § 14-150 (removal of abandoned or unregistered motor vehicles and motor vehicles which are a menace to traffic); Conn. Gen. Stat. § 14-307 (removal of motor vehicles in violation of parking restrictions); Gen.Stat. § 29-23a (authorizing the creation and utilization of a rotational towing system without dictating guidelines by which the towing system must be operated).

3

p. 3, para. 1.[2]  Plaintiffs contend that Hale personally directed that they be arrested and prosecuted as the result of a dispute they had with a rival towing service,  Sardo's Automotive ("Sardo's"), arising out of Sardo's overcharging one of Plaintiffs' regular customers for towing services.[3] Doc. #65, p. 4 (¶ 12).  Hale allegedly directed Plaintiffs' arrest despite the statement of a Mr. Sardo, the owner and operator of Sardo's, that he "did not want any action taken against the [P]laintiffs as this was a business dispute that did not rise past the level of spoken words."  *Id.*   Plaintiffs further maintain that Hale ordered warrants to be issued for their arrest for the purpose of humiliating them and interfering with their business and hence their livelihood.  *Id.,* p. 4  (¶ 13).  Plaintiffs were forced to expend time and money defending themselves against the criminal charges.  *Id.*, p. 4 (¶ 14).

Plaintiffs Heusser, Sr. and Jr.,  maintain that Hale focused on their arrest on  misdemeanor charges to "unilaterally and arbitrarily suspend Frank's Service Station from the 'RTL.'"[4]  *Id.*, p. 5 (¶ 15).  Furthermore, they allege that Hale ordered this suspension without providing Plaintiffs with any advance notice or  warning or hearing or other opportunity to be heard."  *Id.*

Plaintiff Heusser, Jr. asserts that he has repeatedly requested that Frank's Service Station be reinstated on the RTL to tow abandoned vehicles on Ansonia's behalf.  *Id.*, p. 3-4 (¶ 11).  He claims

---

[2]Defendants contend that such removal of Frank's Service Station was due to the arrest of individual Plaintiffs Heusser, Sr. and Jr.  Doc. #74-1, p. 3, para. 1

[3]Plaintiffs allege that Sardo's bill to that customer was "eventually changed to contain only charges that are allowed by law."  Doc. #65, p. 4 (¶ 12).

[4]Plaintiffs were informed that Frank's Service Station was removed due to their pending criminal charges, but they claim that other service stations (*i.e.*, Sardo's Automotive) were not removed from the list when their operators faced criminal charges.  Doc. #65, p. 5 (¶ 16). Plaintiffs nonetheless contradict this very allegation when they also state that Defendant Hale was aware that Sardo's engaged in unlawful towing "as representatives of Srado's [sic] Automotive were arrested, and the business itself was suspended from the 'RTL'" for engaging in this practice.  *Id.*, p. 4 (¶ 11).

that Hale has repeatedly and unlawfully denied that request. *Id.*  Plaintiffs also allege that Hale has allowed Sardo's, an "out-of-town business," to perform that work while using dealer plates, which they contend is a violation of Connecticut law. *Id.*, p. 4 (¶ 11).  Surprisingly, Plaintiffs thereafter acknowledge that, as a result of Sardo's alleged unlawful practice, "representatives of Srado's [sic] Automotive were arrested, and the business itself suspended from the 'RTL.'" *Id.*

On  November 13, 2007, Plaintiffs Heusser, Sr. and Jr., commenced the present litigation against Hale in this Court**.**  *Heusser, et al., v. Hale*, 3:10-CV-1660 (CSH) ("the 2007 Action").  The Complaint originally set forth one count against defendant Hale, alleging violation of Plaintiffs' due process rights under the Fourteenth Amendment through the removal of Frank's Service Station from the RTL.  Doc. #1.  Thereafter, Plaintiffs amended their complaint, incorporating additional counts, and adding Frank's LLC as a plaintiff and the City of Ansonia as a defendant.[5]  *See* Doc. #15 (filed 3/8/08) and Doc. #65 (filed 10/23/09).

During the pendency of the present action, Plaintiffs' misdemeanor charges were reduced to non-criminal infractions..  Doc. #65, p. 5 (¶ 18).   Plaintiffs aver that they informed Hale of the reduction in charges, but he refused to restore Frank's Service Station to the RTL**,** allegedly in retaliation for their lawsuit against him.  *Id.*  Plaintiffs further contend that Hale has a "personal hatred vendetta" against them, evidenced by his alleged demand that Ansonia  police officers not

---

[5]Plaintiffs initiated a second action against Hale, entitled, *Heusser, et al., v. Hale, et al.*, No. 3:08-cv-708 (PCD).  That action was subsequently consolidated with the present action and resulted in the addition of the City of Ansonia as a defendant and new causes of action for, *inter alia*,  retaliation in violation of their First Amendment rights, violation of Plaintiffs' Equal Protection rights under the Fourteenth Amendment, tortious interference with a business expectancy, intentional infliction of emotional distress, and negligent infliction of emotional distress.

associate with them.[6]  *Id.,* p. 5 (¶ 19).

Plaintiffs informed the Ansonia Board of Aldermen of Hale's refusal to reinstate Frank's Service Station onto the RTL and Hale's demands that his officers not associate with Plaintiffs.  *Id.,* p. 6 (¶ 20).  On March 11, 2008, the President of the Board of Alderman informed Plaintiffs that Frank's Service Station would not be returned to the RTL because of their pending litigation against Hale.  *Id.,* p. 6 (¶¶ 20-22).   Plaintiffs argue that the exclusion of Frank's Service Station is discriminatory, in that Sardo's remained on the RTL while it pursued a lawsuit against the City of Ansonia.  *Id.,* p. 6 (¶ 24).

B.      **Frank's LLC**

The third plaintiff in this action is Frank's LLC, a limited liability corporation in the State of Connecticut, which is owned and operated by Plaintiff Franklyn Heusser, Jr.  *Id.,* p. 1  (¶ 3). Frank's LLC is a business engaged in providing towing services.  *Id.,* p. 6 (¶ 25).   It is a new business that recently began operating; and is a separate entity from Frank's Service Station.  *Id.*, p. 6 (¶ 26).   Frank's LLC submitted an application to be placed on the RTL, but the application was rejected.  *Id.,* p. 6 (¶ 27).    Hale and Ansonia's Corporation Counsel, Kevin Blake, refused to provide an explanation for the rejection.  *Id.*

Plaintiffs claim that all of the Defendants' alleged actions were taken "in a manner which was outrageously arbitrary," "irrational," and "shocking to the conscience."  *Id.,* p. 6 (¶ 28).   Such behavior has allegedly caused Plaintiffs to suffer emotional distress.  *Id.,* p. 6 (¶ 29).

_____

[6]Hale also purportedly barred one such officer from associating with Plaintiffs while he "was off duty, even though this officer had been a personal friend and business associate of the plaintiffs for many years."  Doc. #65, p. 5 (¶ 19).

## II.    **JURISDICTION AND VENUE**

Plaintiffs assert that this Court has "federal question" subject matter jurisdiction over their claims pursuant to 28 U.S.C. §§ 1331[7] and 1343(a)(3)[8] and 42 U.S. §§ 1983 and 1988. Specifically, Plaintiffs contend that their claims arise as violations of their constitutional rights under the First Amendment (Counts One and Two) and the Equal Protection Clause of the Fourteenth Amendment (Counts Three, Four, and Nine).

This Court may also exercise supplemental jurisdiction over Plaintiffs' state law claims of "tortuos [sic] interference with a business expectancy" (Counts Five, Six, Ten), "intentional infliction of emotional distress" (Count Seven), and "negligent infliction of emotional distress" (Count Eight) if these claims that are "so related to" Plaintiffs' constitutional claims "that they form part of the same case or controversy."[9]   28 U.S.C.§ 1367(a). *See also Miller v. Lovett*, 879 F.2d

---

[7]28 U.S.C. § 1331 confers "federal question" jurisdiction upon the district courts as follows:

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[8]28 U.S.C. § 1343, captioned "Civil rights and elective franchise," provides:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
. . .
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; . . . .

28 U.S.C. § 1343(a)(3).

[9]Section 1367, captioned, "Supplemental jurisdiction," states in relevant part:

1066, 1071 (2d Cir. 1989) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (district

court has "jurisdiction to hear claims under state law whenever (1) there is a claim arising under the

constitution or federal laws; (2) the relationship between the federal claim and the state claim permits

the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has

substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal

claims derive from a common nucleus of operative fact").    Plaintiffs' state law claims derive from

a common nucleus of operative facts with their First Amendment and Equal Protection claims.  As

long as Plaintiffs' constitutional claims remain in this action, it is  thus "ordinarily to be expected

to try them all in one judicial proceeding."  *Miller*, 879 F.2d at 1071.

Venue is proper in this District pursuant to 28 U.S.C. § 1391.  Section 1391(b) provides that

a civil action "not founded solely on diversity of citizenship" may only be brought in three specified

judicial districts:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  Pursuant to section 1391(b)(1), Defendant Hale resides in the State of

---

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

Connecticut as Ansonia's Chief of Police and the City of Ansonia is a municipal corporation organized under the laws of Connecticut.[10] Furthermore, pursuant to section 1391(b)(2), Connecticut is the location where the events allegedly giving rise to the claim occurred.   Thus, venue in the District of Connecticut, which is undisputed by the parties, is proper.

III.    <u>STANDARD OF REVIEW - Rule  12(b)(6) -  Failure to State A Claim</u>

The United States Supreme Court's most recent iteration of  the pleading standard required to withstand a Rule 12(b)(6) motion is set forth in *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868  (2009).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1950   (quoting  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  The complaint must thus set forth  "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim.  *Twombly,* 550 U.S. at 556.

Furthermore, the Supreme Court has distinguished between factual content and conclusory allegations, stating that factual grounds must consist of more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and must tender more than "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*,

---

[10]Pursuant to 28 U.S.C. § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

550 U.S. at 555, 557) (internal quotation marks omitted).[11]   In sum, [t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129

S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  "Although for the purposes of a motion to dismiss

[the court] must take all of the factual allegations in the complaint as true," it is "not bound to accept

as true a legal conclusion couched as a factual allegation."  *Iqbal,* 129 S. Ct. at 1949-50 (quoting

*Twombly*, 550 U.S. at 555).   "While legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations."  *Iqbal,* 129 S. Ct. at 1950.   Plaintiff's "[f]actual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all of the complaint's allegations are true."  *Twombly*, 550 U.S. at 545.  *See also Starr v. Sony

BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (applying *Iqbal* standard of review).

     The Court's focus on a motion to dismiss under Rule 12(b)(6) is "not whether the plaintiff

will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims."

*Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (citing pre-*Iqbal* and

*Twombly Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974))*.*  The complaint must do more than create

"a sheer possibility that a defendant has acted unlawfully" – *i.e.*, more than plead "facts that are

'merely consistent with' a defendant's liability."  *Iqbal*, 129 S. Ct.  at 1949.  Rather, it must include

"enough facts to state a claim to relief that is plausible on its face."[12]   *Id.*

---

[11]*See also Hayden v. Paterson*, 594 F.3d 150, 157 n.4 (2d Cir. 2010) (allegations must be
more than "mere conclusory statements")*;  Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996)
("[w]hile the pleading standard is a liberal one, bald assertions and conclusions of  law will not
suffice").

[12]As the Supreme Court explained, the plausibility standard of pleading is not a
"probability requirement," but does require plaintiff to present "more than a sheer possibility that
a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010); *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. N.Y. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950, and citing *Twombly,* 550 U.S. at 565-66)).

Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'' *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted).[13]  *See also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("In general, our review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits,  and any documents incorporated in the complaint by reference."). A complaint challenged by a 12(b)(6) motion must be construed liberally. *See Rescuecom Corp. v.Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009); *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009); *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001).

---

[13]*See also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.") (brackets and internal quotation marks omitted) (citing *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960 (1992).

IV.    **DISCUSSION**

A.    **Whether Counts One and Two of the Complaint set forth legally cognizable claims for First Amendment retaliation - Whether Plaintiffs' speech is a matter of public concern**

Defendants first argue that Counts One and Two of Plaintiffs' Amended Complaint for First Amendment retaliation fail to state valid claims because neither alleges retaliation for speech that is a "matter of public concern."   Rather, they contend that the  speech for which Defendants allegedly retaliated, the filing of the complaint in the 2007 Action, related solely  to Plaintiffs' financial interest (*i.e.*, furthering their employment interest in remaining on the RTL).   Defendants thus request that this Court dismiss both counts.

1.    **Retaliation**

Generally, to prevail on a First Amendment retaliation claim under Section 1983,[14] the plaintiff must make a *prima facie* showing of "retaliation."   Specifically, the plaintiff must establish that the adverse state action was, in fact, "made in retaliation for his exercise of the constitutional right of free speech." *Greenwich Citizens Committee, Inc.. v. Counties of Warren and Washington Industrial Development Agency*, 77 F.3d 26, 32 (2d Cir.1996) (citing *Perry v. Sindermann*, 408 U.S. 593, 598 (1972)).

In the instant case, Plaintiffs allege that the actions of Hale and the City, including, *inter alia*, refusing to reinstate Frank's Service Station onto the RTL and "refusing to allow Plaintiffs to engage in the towing of abandoned vehicles,"  were taken to "punish and retaliate against the Plaintiffs for filing a lawsuit against Defendant Hale, in violation of the First Amendment . . . as enforced through

---

[14]Section 1983 provides in pertinent part that "[e]very person who, under color of [state law,] subjects . . . any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."   42 U.S.C. § 1983.

Sections 1983 and 1988." Doc. #65, p. 7 (¶¶ 31-33).    Plaintiffs thus contend that their protected

speech in bringing the 2007 Action against Hale was linked to and resulted in Defendants' retaliatory

behavior.

### 2.        Public versus Private Citizen

The Second Circuit restated the criteria for First Amendment retaliation in *Sousa v. Roque*,

578 F.3d 164 (2d Cir. 2009):

> 'It is established law in this Circuit that, '[r]egardless of the factual context, we have required
> a plaintiff alleging retaliation to establish speech protected by the First Amendment.'
> *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). To determine whether or
> not a plaintiff's speech is protected, a court must begin by asking "*whether the employee
> spoke as a citizen on a matter of public concern*." *Garcetti [v. Ceballos]*, 547 U.S. [410,]
> 418, 126 S.Ct. 1951 [(2006)]. If the court determines that the plaintiff either did not speak
> as a citizen or did not speak on a matter of public concern, "the employee has no First
> Amendment cause of action based on his or her employer's reaction to the speech." *Id.*

578 F.3d  at 169-70 (emphasis added).

 For a private citizen to prove First Amendment retaliation, he must show: "(1) he has an

interest protected by the First Amendment; (2) defendants' actions were motivated or substantially

caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his

First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

In *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir.1993), the Second

Circuit clarified that a towing company with an informal towing arrangement with a town is

considered a "public employee" for  the purposes of First Amendment retaliation analysis.[15]   The

*Curley* "private citizen" test does not apply in the context of a public employee who has suffered an

---

[15]*See also Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 673 &  677-79 (1996)
(independent contractors'  First Amendment retaliation claims are analyzed the same as those of
public employees).

adverse employment action as a result of exercising his First Amendment rights.  *Morrison v. Johnson*, 429 F.3d 48, 51 (2d Cir. 2005).

In the case at bar, Plaintiffs have neither alleged the existence of, nor provided the Court with a copy of, a formal contract or agreement between the City and Plaintiffs with respect to the RTL.  Thus, as in *White Plains Towing Corp.*, 991 F.2d at 1059, Plaintiffs appear to have "no formal franchise from or contract with" the City.   Because Plaintiffs explicitly allege that they  had an "informal arrangement" with the City for towing, I conclude that they were "public employees" withing the meaning of *White Plains Towing Corp.*   Hence, the *Curley* test is inapplicable to their First Amendment claim.[16]

Rather, the Court must apply the "public employee" test, under which a plaintiff must show: "(1) the speech at issue was made as a citizen on *matters of public concern* rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (internal quotations and citations omitted)

---

[16]The Court notes that even had Plaintiffs been "private citizens," as they contend, their First Amendment retaliation claims would fail under the *Curley* test because Plaintiffs alleged no facts or circumstances to show that their speech in pursuing the present lawsuit has been "chilled."  *See, e.g., Zherka v. Amicone*, No. 10-37-cv, 2011 WL 710462, at *2 (2d Cir. Mar. 2, 2011) ("private citizens claiming retaliation for their criticism of public officials have been required to show that they suffered an 'actual chill' in their speech as a result."); *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.2004) (line of cases in Second Circuit –  involving criticism of public officials by private citizens –  "does impose an actual chill requirement for First Amendment retaliation claims"); *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (affirming Rule 12(b)(6) dismissal on grounds that plaintiff had not alleged actual chilling effect and actually even admitted that he had not changed his behavior as a result of town's allegedly adverse actions).

(emphasis added).[17]   *Accord Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008);

*Ricioppo v. County of Suffolk*, 353 F. App'x 656, 657 (2d Cir. 2009).

### 3.   Matter of Public Concern

In their pending motion to dismiss, Defendants do not dispute whether Plaintiffs suffered any

adverse action or whether Hale was motivated by Plaintiffs' speech to take such action.  At present,

Defendants solely contest whether, as a matter of law, Plaintiffs' speech in the 2007 Action was

made "on matters of public concern."  They point to the language of Plaintiffs' Complaint in the

2007 Action against Hale as establishing that the Complaint's "sole focus" was "to remedy the

alleged wrongful removal of the Plaintiffs from the Rotational Tow List and to recover monetary

damages related to the alleged removal."  Doc. #74-2, p. 8, para. 1.  In essence, they argue that the

previous suit was brought solely to further Plaintiffs' employment interest; and thus there is no

matter of public concern.[18]

"Public employee speech is protected from employer retaliation under the First Amendment

only where 'the employee spoke as a citizen on a matter of public concern.'"  *Storman v. Klein*, No.

09-4894-cv, 2010 U.S. App. LEXIS 21134, at *5 (2d Cir. Oct. 12, 2010) (quoting  *Garcetti v.*

---

[17]Nonetheless, "the public employer may still prevail if it demonstrates that it would have
taken the same adverse action in the absence of the protected speech." *Fago v. City of Hartford*,
No. 3:02-CV-1189 (AHN), 2006 WL 860126, *8 (D. Conn. Mar. 31, 2006) (citing *Mandell v.
County of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003)).

[18]Defendants cite *White Plains Towing Corp.* to assert that, even if the 2007 lawsuit "may
appear to touch upon a matter of public concern, the Court is entitled to disregard that possibility
where it is clear that the employee has raised the issue solely to further his own employment
interest." Doc. #74-2, p. 8, para. 2.  They thus claim that, because Plaintiffs' "November 2007
Complaint is narrowly focused on advancing business interests," as opposed to vindicating
constitutional rights, Counts One and Two should be dismissed.  *Id.* p. 8-9.

*Ceballos*, 547 U.S. 410, 418 (2006)).  *Accord Sousa v. Roque*, 578 F.3d 164, 169-70 (2d Cir. 2009)

("To determine whether or not a plaintiff's speech is protected, a court must begin by asking

'whether the employee spoke as a citizen on a matter of public concern.' If the court determines that

the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the

employee has no First Amendment cause of action based on his or her employer's reaction to the

speech.') (citation omitted); *White Plains Towing Corp.*, 991 F.2d at 1057 (public employee who

seeks to recover for First Amendment retaliation must initially establish that his speech "may be

fairly characterized as constituting speech on a matter of public concern") (internal quotations

omitted).

The "matter of public concern" rule also "applies where the allegedly protected conduct is

the filing of a lawsuit." *Storman*, 2010 U.S. App. LEXIS 21134, at *5-6 (citing *Ruotolo v. City of

New York*, 514 F.3d 184, 188-90 (2d Cir. 2008) (affirming dismissal of retaliation claim where

"lawsuit did not constitute speech on a matter of public concern")); *accord  Miller v. City of Ithaca*,

No. 3:10-cv-597, 2010 WL 3809842, at * 11 (N.D.N.Y.  Sept. 22, 2010) ("The filing of litigation

alone does not automatically constitute protected speech.  Rather, the basis for the lawsuit must

implicate matters of public concern.").[19]

"The Supreme Court has defined 'a matter of public concern' as one that 'relat[es] to any

matter of political, social, or other concern to the community.'" *Sousa*, 578 F.3d at 170 (citing

*Connick v. Myers*, 461 U.S. 138, 146 (1983)).   Whether an employee's speech addresses a matter

of public concern is a question for the court to decide.  *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir.

_____

[19]*Accord Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 925 (7th Cir. 2007); *Rendish v. City of Tacoma*, 123 F.3d 1216, 1221 (9th Cir. 1997).

1999) (citing *Connick*, 461 U.S. at 147-48).   In so deciding, the court must take into account "the content, form, and context of a given statement, as revealed by the whole record."  *Lewis*, 165 F.3d at 163 (citing *Connick*, 461 U.S. at 147-48).   As one factor, the court may consider the speaker's motive to "determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  *Lewis*, 165 F.3d at 164.

"An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking upon matters only of personal interest."  *Sousa*, 578 F.3d at 174 (internal quotation marks omitted).   However, "it does not follow that a person *motivated by* a personal grievance cannot be speaking on a matter of public concern."  *Id*. (emphasis in original). Thus, motive alone is not dispositive in the "matter of public concern" inquiry.  *Id.* at 173-74.   *See also Connick*, 461 U.S. at 148-49;[20]  *Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006)  ("We hold that the speaker's motive, while one factor that may be considered, is not dispositive as to whether his speech addressed a matter of public concern.").

In  the  case  at  hand,  the  speech  at  issue  is  comprised  of  the  allegations  set  forth  in  the

_____

[20]The plaintiff in *Connick v. Myers*, 461 U.S. 138, 148-49 (1983), was an assistant district attorney in New Orleans who claimed that she was unwillingly transferred to prosecute in another district in retaliation for distributing a questionnaire, soliciting the views of her colleagues regarding such items as, *inter alia*, employee morale, the need for a grievance committee, and  whether employees felt pressure to work in political campaigns.   The court noted that Connick's motive in raising the questions on the questionnaire was not to inform the public of the manner in which the district attorney's office discharged its governmental responsibilities, but rather to "gather ammunition for another round of controversy with her superiors."  461 U.S. at 148.  Despite Connor's primarily self-serving motive, the court found that one question in her questionnaire touched upon a "matter of public concern," *i.e.*, whether any of the district attorneys ever felt pressured to work in political campaigns on behalf of office supported candidates.  *Id.* at 149.  "[T]here is a demonstrated interest in this country that government service should depend upon meritorious performance rather than political service." *Id.*  Accordingly, Connor's motive in speaking was not dispositive in the determination of whether her speech addressed a matter of public concern.

Complaint of the 2007 Action.  The filing of that  lawsuit alone did not automatically constitute

protected speech.    It is incumbent on the Court to examine the language in the Complaint to

determine whether it implicates any matters of public concern.

In the 2007 Action, Plaintiff Heussers, Sr. and Jr., clearly sought to further private interests,

requesting compensatory and punitive damages, attorneys' fees and costs and a temporary and

permanent injunction to return Frank's Service Station to the RTL.  Doc. #1, p. 3.  The question is

thus whether the Complaint also touches upon a matter of public concern, such as generalized police

misconduct or unlawful discrimination.[21]    The Court concludes that no language in the 2007

Complaint addresses police policies or generalized misconduct. Rather, the Complaint refers

narrowly to Hale's unilateral and arbitrary suspension of Frank's Service Station from the RTL.[22]

Doc. #1, p. 2 (¶¶ 7-10).

---

[21]The Second Circuit has recognized  that "a police department's employment policies . . . are a matter of public concern."  *White Plains Towing Corp.*, 991 F.3d at 1058.

[22]Furthermore, even if this Court were to examine the language of the *later* complaints in this action, which were filed *after* Frank's Service Station was terminated from the RTL and refused reinstatement, neither of those complaints describes a matter of public concern.  *See Heusser v. Hale*, 3:08-cv-708 (PCD) (Doc. #1) and 07-cv-1660 (CSH) (Doc. ##15 & 65). Granted, unlike the language in the 2007 Complaint, the later complaints include some vaguely-defined allegations of misconduct by Hale.  *See, e.g,  Heusser v. Hale*, 3:08-cv-708 (PCD),  Doc. #1,  p. 2  (¶ 4) ("Hale has a history of using his office as a vehicle to advance personal vendettas" and "Hale often chooses to disregard the law of the state if doing so advances his own twisted agenda"); *id.*, p. 4 (¶ 11) ("Defendant Hale has a personal animus, more aptly described as a hatred for the plaintiffs. Defendant Hale has in the [past] used his position to make the plaintiffs lives harder and continues to do so to this day, as he has done to other citizens of the City of Ansonia."); *Heusser v. Hale*, 3:07-cv-1660 (CSH), Doc. #65, p. 2 (¶ 4) & p. 5 (¶ 19) (Hale engaged in a "personal hatred vendetta" against Plaintiffs).  These generalized and conclusory allegations, however, fail to set forth the requisite well-pleaded and specific facts necessary to plead adequately a pattern of discriminatory or unconstitutional police misconduct.  Such cursory and broad allegations regarding a personal vendetta are insufficient to implicate a matter of public concern.

Furthermore, although Plaintiffs reference a deprivation of their own personal rights to "procedural and substantive due process of law in violation of the Fourteenth Amendment," *id*. at p. 2-3 (¶ 10), they make no allegations regarding any pattern or series of unconstitutional practices by the Ansonia Police Department. *See, e.g.*, *Plofsky v. Giuliano*, No. 06-cv-0789 (JCH), 2009 WL 902360, at *9 (D. Conn. Mar. 31, 2009) ("[I]n order to be considered a matter of public concern the speech must reach beyond matters of personal interest. . . . [A] generalized public interest in the fair or proper treatment of public employees is not enough."  Moreover, "being denied due process concerns only [the individual Plaintiff], not the general public.") (citations omitted).

The Second Circuit held in *Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008), that "retaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern." (citation and internal quotation marks omitted).  In *Ruotolo* a former New York City Police Department ("NYPD") sergeant sued the City of New York and, *inter alia*, the NYPD, for retaliation in violation of his First Amendment right to free speech.  Specifically, he alleged that he became the subject of adverse personnel actions (*i.e.*, assignment to undesirable shifts, denial of leave time, transfer to a less desirable precinct, and discipline for trivial and fabricated reasons) in retaliation for his preparation of a report concerning health conditions at his assigned police precinct[23] and for filing a lawsuit alleging such retaliation.

_____

[23]Ruotolo, in his position as Safety Officer for his precinct in the Bronx, prepared a report regarding the local environmental hazards relating to possible contamination of the soil and air from underground gasoline storage tanks.  His report contained a detailed survey that identified a "seemingly large number of cancers, miscarriages, birth defects and other health problems afflicting individuals working at the precinct." 514 F.3d at 186.

The *Ruotolo* court reasoned that *Garcetti v. Ceballos*, 547 U.S. 410 (2006), properly mandated dismissal of the portion of his retaliation claim premised on his report because that report was speech made pursuant to his employment duties. *See Garcetti*, 547 U.S. at 419-24 (employee who speaks in his official capacity is not speaking as a citizen for First Amendment purposes so employer retaliation for such speech does not justify displacement of managerial discretion by judicial supervision).

Moreover, and relevant to the case at bar, Ruotolo's claim that he was retaliated against for filing a federal lawsuit failed because that lawsuit focused primarily on grievances of a personal nature. The Second Circuit noted that a court's proper focus in the inquiry as to whether that lawsuit addressed a matter of public concern was the content, form and context of the particular statement.[24] Examining the language of the complaint itself, the court of appeals noted that the relief sought is "almost entirely personal to Ruotolo, including compensatory damages and an injunction relating to Ruotolo's employment record." 514 F.3d at 190. Granted, the complaint accused the City of "routinely tolerating the violation of whistleblower rights," and sought punitive damages to deter "'future illegal and retaliatory conduct,' arguably hinting at some broader public purpose." *Id.* "However, retaliation against the airing of generally personal grievances is not brought within the

_____

[24]The Court in *Ruotolo* emphasized that the "heart of the matter is whether the employee's speech was 'calculated to redress personal grievance or whether it had a broader public purpose.'" 514 F.3d at 189 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)). As stated *supra*, however, the Second Circuit recently clarified that motive alone is not dispositive in the "matter of public concern" inquiry. *Sousa v. Roque*, 578 F.3d 164, 173 (2d Cir. 2009); *see also Connick v. Myers*, 461 U.S. 138, 148-49 (1983); *Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006) ("We hold that the speaker's motive, while one factor that may be considered, is not dispositive as to whether his speech addressed a matter of public concern."). Nonetheless, motive remains one factor to consider when examining whether the speech implicates a matter of public concern.

20

protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern.'" *Id.* (citing *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991)).[25] *See also Miller v. City of Ithaca,* No. 3:10-cv-597, 2010 WL 3809842, at * 11 (N.D.N.Y. Sept. 22, 2010) (plaintiff police officer's lawsuit claiming retaliation failed to address "matter of public concern" because complaint identified no incidents concerning discrimination against other employees and "[n]early all the relief sought" was "personal to Plaintiff"); *Kempkes v. Marvin*, No. 07-CV-11351 (KMK), 2008 WL 5330673, *7 (S.D.N.Y. Dec. 19, 2008) (plaintiff police officer's retaliation claim against village and its board members failed because lawsuit that was basis for alleged retaliation failed to address a matter of public concern – *i.e.*, it was "'generally personal' within the meaning of *Ruotolo*" in that it "did not allege that anyone other than himself suffered the effects of the defendant's acts" (*e.g.*, reassignment, transfer, time off, and discipline) and did not seek any relief "to deter future adverse acts by defendants against others").[26]

"A public employee may not transform a personal grievance into a matter of public concern

---

[25]In *Ezekwo v. New York City Health & Hosp. Corp.,* 940 F.2d 775, 781 (2d Cir. 1991), the plaintiff physician complained about aspects of her hospital residence program, including discrimination on the basis or race, sex, and national origin.   Viewing these complaints on the whole, the Second Circuit concluded that they did not implicate matters of public concern. Although the quality of the physician training program may affect the public, the plaintiff "was not on a mission to protect the public welfare.  Rather her primary aim was to protect her own reputation and individual development as a doctor." *Id.*

[26]*Cf. Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) (police officer's lawsuit was a matter of public concern because it referenced a growing trend in bigotry toward Spanish-speaking police officers and cited specific examples of discrimination; thus, his allegations concerned "discrimination problems generally and were not limited to instances affecting only [the plaintiff]").

by invoking a supposed popular interest in the way public institutions are run." *Ruotolo*, 514 F.3d at 190 (quoting *Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir.2007)).   In other words, "[a] generalized public interest in the fair or proper treatment of public employees is not enough." *Ruotolo*, 514 F.3d at 190.

In the present case, the Complaint in the 2007 Action primarily addresses the personal grievances of the two individual Plaintiffs, Heusser, Sr. and Jr., stemming from  Hale's allegedly arbitrary removal of Frank's Service Station from, and subsequent repeated refusal to reinstate it to, the RTL.  These accusatory allegations are entirely conclusory.  There are no specific or well-pleaded factual allegations regarding a practice or history of discriminatory treatment of the other individuals or entities on the RTL.   Moreover, all relief sought in the 2007 Complaint is of a personal nature, "compensatory damages, punitive damages, attorney fees and costs" and "a temporary and permanent injunction requiring" Hale to reinstate Frank's Service Station to the RTL.  Doc. #1, p. 3; Doc. #74-2, p. 3.

While I accept in general the proposition that a police department's employment policies may constitute a matter of public concern,  *White Plains Towing Corp.*, 991 F.3d 1058, judicial disposition of Defendants' motion to dismiss turns solely upon the pleadings in this case.   The Complaint in the 2007 Action describes only the one-time suspension of Plaintiffs' business from the RTL and not a pattern or practice of such terminations.   The 2007 Action, on its face, was thus an action to redress the deprivation of Plaintiffs' rights and not those of any other individual or group.

I am also mindful that a person motivated by a personal grievance *may also speak on a matter of public concern*.  Thus, Plaintiffs' motivation to redress their personal grievances did not preclude

them from also speaking out on a matter of public concern.  However, such was not the case in the Complaint filed in the 2007 Action.  As the Second Circuit set forth in *Sousa*, "[a]n employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking 'upon matters only of personal interest.'"  578 F.3d at 174 (citing *Connick*, 461 U.S. at 147).  Such "speech on a purely private matter . . . does not pertain to a matter of public concern." *Sousa*, 578 F.3d at 174 (citing *Lewis*, 165 F.3d at 164).   Because the 2007 Action addressed no issues of concern to the community, it was not speech on a matter of public concern and may not be the predicate for a First Amendment retaliation claim. Accordingly, Counts One and Two of the Amended Complaint shall be dismissed.

**B.**   **Whether Counts Three, Four, and Nine of the Amended Complaint set forth legally cognizable Equal Protection claims**

In their Amended Complaint, Plaintiffs allege that they have been deprived of Equal Protection of the law in violation of the Fourteenth Amendment by Hale's (1) removal of  Frank's Service Station from the RTL (Count Three), (2) refusal to return Frank's Service Station to the RTL (Count Four), and (3) failure to provide Frank's LLC a position on the RTL (Count Nine).   With respect to each of these actions, Plaintiffs maintain that Defendants acted "intentionally, arbitrarily, maliciously and irrationally" and thereby treated Plaintiffs differently "from all identically situated individuals on the RTL." Doc. #65, p. 8 (¶ 35); p. 8-9 (¶ 38); and p. 11 (¶ 52).

The Defendants assert that all Plaintiffs' Equal protection claims should be dismissed.  They contend that, to the extent that these claims set forth "class-of-one" claims, such claims may not exist in a government employment context.  Defendants rely principally upon  *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 598 (2008).   Alternatively, Defendants argue that, if viewed as "selective

prosecution" claims,[27] it is the law of this Circuit that where a selective prosecution equal protection claim is found to 'coalesce' with a legally insufficient First Amendment retaliation claim, the equal protection claim must also fail as a matter of law."  Doc. #74-2, p. 13 (citing *African Trade & Info. Cent. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002)).  Lastly, Defendants argue that with respect to the allegations in Count Nine that Defendants failed to place Frank's LLC on the RTL, it is impossible for Frank's LLC to prove that it is "similarly situated" to others on the RTL because it never had a place on that list.  Doc. #74-2, p. 12.

The Court will examine Plaintiffs' Equal Protection claims under both the "class-of-one" and "selective enforcement" theories to determine whether any of these counts states a claim upon which relief may be granted.

### 1.    Class of One

Generally, the Equal Protection Clause requires that the government treat all similarly situated people in a like manner. *See Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)).  While at first glance the phrase "class of one" seems oxymoronic, the Supreme Court has held that Equal Protection claims may be brought by a ''class of one'' where a plaintiff alleges that he or she has been''intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.''  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*) (citations omitted)  (plaintiff property owner requested access to municipal

---

[27]Although courts within this Circuit have used both "selection prosecution" and "selective enforcement" to describe such Equal Protection claims, this Court prefers to use "selective *enforcement*," finding that the term "prosecution" is, in general, more properly applied in the criminal context.

water supply, but defendant village conditioned its approval on receipt of 33–foot easement from plaintiff –  an easment 18 feet longer than easements required of other property owners seeking access to water supply.).[28]

In the context of public employment, however, the Supreme Court's decision in *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 607 (2008) eliminated "class-of-one" claims for government employees.  *See also Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (*Engquist* "eliminated class-of-one claims for government employees," making it a "jurisdiction-limiting decision"); *Baptista v. Hartford Board of Education*, No. 3:08-CV-1890 (MRK), 2009 WL 2163133, at *4 (D. Conn. July 21, 2009) ("an employee is unable to bring a class-of-one claim against a public employer under *Engquist*").

In *Engquis*t, a former state employee was  laid off during an agency reorganization.  In response, she sued, arguing that she was terminated for arbitrary and malicious reasons. *Engquist*, 553 U.S. at 595.  She  sought to bring a "class-of-one" Equal Protection claim, maintaining that the Constitution applies to the state in its role as employer, as well as in its role as regulator.

The *Engquist* Court held that a "class-of-one" claim under the Equal Protection Clause is unavailable as a matter of law when the government makes discretionary decisions as to government employment.  The Court explained that it had "long ago recognized the 'settled principle that government employment, in the absence of legislation, can be revoked at the will of the appointing

---

[28]To succeed on a "class-of-one" claim under the Equal Protection Clause, a plaintiff must establish that:  "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010).

officer."' *Id.* at 606 (citing *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 896 (1961)).

"[R]ecognition of a class-of-one theory of equal protection in the public employment context – that is, a claim that the State treated an employee differently from others for a bad reason, or for no reason at all – is simply contrary to the concept of at-will employment. The Constitution does not require repudiating that familiar doctrine." *Id.* Thus, "[i]n concluding that the class-of-one theory of equal protection has no application in the public employment context. . . we are guided, as in the past, by the common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Id.* at 607-08. (internal quotation and citation omitted). If public employees were allowed to claim discrimination because "they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful employment action – not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments – on the theory that other employees were not treated wrongfully." *Id.*

Because the Second Circuit deems towing operators with an informal relationship with a city to be "public employees,"[29] I find that pursuant to *Engquist*, Plaintiffs have no valid Equal Protection "class-of-one" claim.[30] As towing operators either dismissed from or seeking entry onto

---

[29] *See White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993), *cert. denied*, 510 U.S. 865 (1993).

[30] Plaintiffs argue that from the time Hale suspended Frank's Service Station from the RTL, they became private citizens; and thus *Engquist* does not currently apply to them. This argument is clearly flawed because the plaintiff in *Engquist* was a *former* state employee whose employment was terminated in a layoff. Moreover, the Second Circuit has applied *Engquist* in

the RTL, Plaintiffs were all "public employees" within the meaning of *White Plains Towing Corp*. As such, the alleged arbitrary "personnel action" in terminating their employment and/or failing to hire or re-hire them falls within the *Engquist* ban on "class-of-one" claims for government employees.[31]   Framed as "class-of-one" claims, Counts Three and Four must be dismissed.

With respect to Frank's LLC's claim in Count Nine in particular, Defendants argue that Frank's LLC cannot, in any event, prevail on a "class-of-one" claim because it cannot make a *prima facie* showing that it is "identical in all relevant respects" to the individuals on the RTL. Doc. #74-1, p. 12, para. 1 (citing *Morron v. City of Middletown*, 464 F. Supp. 2d 111, 120 (D. Conn. 2006) (setting forth elements of class-of-one claim)).   In other words, Defendants claim that because Frank's LLC was never on the RTL, it is inherently different from those on the RTL, making it impossible for Frank's LLC to argue that it was "identically situated" to those on the list.

The Court need not address that argument because *Engquist* applies equally to hiring decisions, "which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist*, 553 U.S. at 592; *see also Conyers v. Rossides*,

---

subsequent "class-of-one" cases in which public employees were terminated, constructively or directly, and sought damages and/or reinstatement of their government employment. *See, e.g.*, *Porr v. Daman*, 299 F. App'x  84, 86 (2d Cir. N.Y. 2008).

[31]The Court notes that even if the Plaintiffs were characterized as "government contractors," rather than "public employees," *Engquist* would still apply to bar their claims. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008) ("We have little trouble applying the reasoning in *Engquist*, directed at a . . . government-employee relationship, to the circumstances . . . involving a government-contractor relationship.") (quoting United States Supreme holding in *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 674 (1996) ("[t]he government needs to be free to terminate both employees and contractors for poor performance, to improve the efficiency, efficacy, and responsiveness of service to the public, and to prevent the appearance of corruption") and citing *Engquist*, 553 U.S. at 592 (decisions involving government contractors require broad discretion that may rest "on a wide array of factors that are difficult to articulate and quantify")).

No. 07-4095-cv, 2009 WL 513734, at *11 (2d Cir. Mar. 3, 2009) (because plaintiff based claim on general allegation that employer "treated a prospective employee differently from others for a bad reason, or no reason at all," his Equal Protection claim was dismissed pursuant to *Engquist*); *O'Hanlon v. City of Danbury*, No. 3:07CV1727 (RNC), 2009 WL 586278, at *2 (D. Conn. Mar. 9, 2009) ("basis for the Court's holding in *Enquist* [sic] applies equally to hiring decisions").

The refusal to place Frank's LLC on the RTL is akin to an employment decision not to hire. That refusal took place in the context of a government employment decision and, as such, is precluded by *Engquist*.  Therefore, Frank's LLC's  "class of one" claim in Count Nine will be dismissed.

## 2.   **Selective Enforcement**

"It is well settled that, [t]o establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: (1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Emmerling v. Town of Richmond*, 09-CV-6418 (CJS), 2010 U.S. Dist. LEXIS 130948, at *35 (W.D.N.Y. July 23, 2010) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)).   Thus, in order to state a valid claim for "selective enforcement," Plaintiffs must allege that they were treated differently than others similarly situated and that such selective treatment was based on impermissible considerations.

### a.   Alleged retaliation for exercise of First Amendment rights

In Count Four, Plaintiffs allege that Defendants failed to return Frank's Service Station to the RTL "because of their status as Plaintiffs in a lawsuit, when other identically situated individuals also had suits against the town and were never removed." Doc. #65, p. 8-9 (¶ 38). Because Plaintiffs base this Equal Protection claim on Defendants' alleged retaliation for the exercise of their First Amendment rights, Plaintiffs' Count Four Equal Protection claim and First Amendment claims "coalesce." The Second Circuit has held that where a selective enforcement claim is found to "coalesce" with a legally insufficient First Amendment retaliation claim, the Equal Protection claim must also fail as a matter of law. *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2003) (citing *African Trade & Info. Cent. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002)).[32]   In *Cobb*, the Second Circuit explained that "[d]ue to the manner in which [the plaintiffs] have cast their contentions throughout this action, the plaintiffs' selective prosecution and retaliation claims 'coalesce.'" 363 F.3d at 110 (quoting *African Trade & Info. Ctr.*, 294 F.3d at 363). Because plaintiffs failed to provide sufficient evidence to support their First Amendment retaliation claim, the court found it necessary to "direct entry of judgment for the defendants on the plaintiffs' selective prosecution

---

[32]*See also Inturri v. City of Hartford*, 165 F. App'x 66, 70 (2d Cir. 2006) ("Even if the plaintiffs were treated differently, it was not to inhibit their exercise of First Amendment rights, because as noted above, the plaintiffs had no First Amendment right to display their tattoos. Their selective prosecution claim therefore fails.") (citing *Cobb*, 363 F.3d at 110); *Sweeney v. Leone*, No. 3:05cv871 (PCD), 2006 U.S. Dist. LEXIS 57358, at *40 (D. Conn. July 27, 2006) ("As the Second Circuit has noted, where a plaintiff's equal protection claim is premised on an impermissible motive such as a First Amendment violation, the equal protection claim "coalesces" with the First Amendment claim.") (citing *Cobb*, 363 F.3d at 110); *Levesque v. Town of Vernon*, 341 F. Supp.2d 126, 138-39 (D. Conn. 2004) ("Levesque's selective prosecution equal protection claim fails because it is derivative of her First Amendment retaliation claim, which, as discussed herein fails as a matter of law.").

claim as well."  363 F.3d at 110 (citing *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391-92 (7th Cir. 1988) (holding that because the district court properly determined that plaintiff's speech was not constitutionally protected under the First Amendment, "the grant of summary judgment on [plaintiff's] equal protection claim was proper" )).

In the present case, Plaintiffs allege that they were "treated differently from other similarly situated individuals[,] as Sardo's Automotive had a lawsuit pending against the town but in that case . . . was not removed from the rotational tow list."  Doc. #65, p. 6  (¶ 24).  *See also id.*, p.8-9 (¶ 38) ("[I]n failing to return them to the 'RTL' because of their status as Plaintiffs in a lawsuit, when other identically situated individuals also had suits against the town, and were never removed from the 'RTL,' . . . [Defendants] treated the plaintiffs differently from all other identically situated members of the 'RTL.'").

This Court has determined, *supra*, that Plaintiffs' First Amendment retaliation claims, based on the Complaint filed in the 2007 Action,  fail as a matter of law because that Complaint implicates no "matter of public concern."  Plaintiffs' "selective enforcement" claim set forth in  Count Four, alleging retaliation based on Plaintiffs' exercise of First Amendment rights, coalesces with the defective First Amendment claims and therefore fails with them.

        **b.**      **Alleged discrimination based on "malicious or bad faith intent"**

        **1.**      **Discriminatory removal of Frank's Service Station from the RTL based on Plaintiffs' criminal arrests**

In Count Three, Plaintiffs allege that they were removed "from the RTL for a stated reason, that which others were never removed form the RTL."  Doc. #65, p. 8 (¶ 35).  Earlier in their Amended Complaint, Plaintiffs specified that they "were told they were removed [from the RTL]

as a result of their pending [criminal] cases but in the past other service station operators, namely Sardo's [A]utomotive, similarly situated to the plaintiffs[,]  were not removed from the list when they were facing criminal charges."  Doc. #65, p. 5 (¶ 16).

Such alleged discrimination, based on pending criminal charges, does not constitute discrimination based on membership in a particular class, such as race or religion.  It thus falls into the general category of selective treatment based on "malicious or bad faith intent to injure a person." *See Freedom Holdings, Inc.,* 357 F.3d at 234.

The Second Circuit recently held that where a public employee alleges that "he was treated differently from other similarly situated employees *for malicious reasons*" and "not on the basis of his membership in any particular class, his equal protection claim is barred by *Engquist*."  *Massi v. Flynn*, 353 F. App'x 658, 660 (2d Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 2404, 176 L.Ed.2d 924 (2010) (emphasis added).  In *Massi*, the plaintiff police officer "allege[d] that his employer, the Village of Mamaroneck Police Department, intentionally treated him 'differently from others similarly situated' by filing two sets of disciplinary charges against him and suspending him without pay and failing to afford him sufficient due process."[33]  353 F. App'x at 659.   The district court granted defendants' Rule 12(b)(6) motion to dismiss the claim and the court of appeals affirmed.

---

[33]Plaintiff Guy Massi ("Massi"), a sergeant in the Police Department of the Village of Mamaroneck ("VMPD"), brought an action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York against the police chief, a fellow police sergeant, the mayor, and other village officials, alleging, *inter alia*, selective prosecution and unequal treatment in violation of the Fourteenth Amendment.  Specifically, Massi claimed that he was subjected to discipline, including suspension without pay, when he failed to show up for light duty as the result of a medical condition (post-traumatic stress disorder), but that Officer Avolio, a fellow member of the VMPD, was not disciplined under similar circumstances.  Massey attributed the differential treatment to the defendants' malicious or bad faith intent to injure him.

The Second Circuit described Massi's claim of alleged selective treatment as not a "'standard' equal protection claim - [*i.e.*,] that he was treated differently than other similarly situated employees based on his membership in a specific protected class" – but rather as a "class of one" claim, alleging mistreatment due to malice.   Quoting the reasoning in *Engquist*, 553 U.S. at 607-08, the Second Circuit explained that "if plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis for a federal constitutional claim." 353 F. App'x at 660.

The opinion in *Massi* evidences a movement by the Second Circuit toward holding that *Engquist* bars "selective enforcement" claims in the public employment context.  Not surprisingly, district courts within this Circuit have consistently moved in the same direction.   *See, e.g.*, *Spanierman v. Hughes*, 576 F. Supp.2d 292, 307 (D. Conn. 2008) ("Given the Supreme Court's decision in *Engquist*, whether a *LeClair*[34] selective prosecution claim in the public employment context can survive is *doubtful*. . . . In the court's view, this would apply not only to *Olech* class-of-one claims, but also to *LeClair* selective prosecution claims.") (emphasis added)*;* *Emmerling v. Town of Richmond*, 09-CV-6418 (CJS), 2010 U.S. Dist. LEXIS 130948, at *36 (W.D.N.Y. July 23, 2010) ("the Court finds that Plaintiff's 'selective enforcement' claim is barred

---

[34]*See LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (holding that  plaintiff may bring an Equal Protection claim by demonstrating "selective prosecution" – *i.e.*, showing that "(1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.") (citation omitted).

by the Supreme Court's decision in *Engquist*, which held that "the Equal Protection Clause does not apply to a public employee asserting a . . . 'class of one' theory of liability") (citations omitted). Thus, both *Massi* and precedent within this Circuit suggest that *Engquist* properly bars selective enforcement claims involving an employer's malicious, arbitrary, or irrational conduct. Plaintiffs' Equal Protection claim set forth in Count Three should be precluded.[35]

Lastly, even if *Engquist* did not bar Count Three, Plaintiffs themselves refute the very allegation that their business was the only one suspended from the RTL due to pending criminal charges. Specifically, they point out that Defendant Hale was aware that Sardo's violated state law by towing vehicles "while using dealer plates . . . , as representatives of Srado's [sic] Automotive were *arrested*, and the *business itself suspended from the 'RTL'* because they engaged in . . . [that] practice." *Id.*, p. 4 (¶ 11) (emphasis added). By their own words, Plaintiffs acknowledge that Sardo's was suspended from the RTL while criminal charges were pending against its representatives. Such contradictory pleading creates confusion, by negating rather than supporting a plausible claim for selective enforcement.

### 2.     Discriminatory failure to accept Frank's LLC onto the RTL

In Count Nine of their Amended Complaint, Plaintiffs allege that, "in failing to provide Frank's LLC a position on the 'RTL,'" Defendants "intentionally, arbitrarily, maliciously and irrationally treated the Plaintiff [differently] from all other identically situated individuals on the

---

[35]As Judge Mark Kravitz of this District previously noted, "[t]he Supreme Court has never found an equal protection violation where 'government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner.'" *Baptista v. Hartford Board of Education*, No. 3:08-CV-1890 (MRK), 2009 WL 2163133, at * 4 (July 21, 2009) (quoting *Engquist*, 553 U.S. at 605).

'RTL.'" Doc. #65. p. 11-12 (¶ 51).   Plaintiff does not base this Equal Protection claim on

membership in a class or the exercise of constitutional rights.   Rather, this claim asserts that

Defendants simply acted "arbitrarily, maliciously and irrationally."   As set forth, *supra*, the Second

Circuit has held that Equal Protection claims based on malicious intent, rather than membership in

a class, are  "class of one" claims, which are precluded in the public context. *Massi*, 353 F. App'x

at 660.   Because Plaintiff Frank's LLC claims that the City arbitrarily and maliciously failed to

accept its application onto the RTL, thereby refusing to hire it in the government context,  Plaintiffs'

Equal Protection claim in Count Nine is barred.[36]

---

[36]Furthermore, even if *Engquist* were not an insurmountable obstacle to this claim (*e.g.*, if Frank's LLC had been a private citizen instead of a prospective public employee),  Plaintiffs have failed to plead the claim with the requisite specificity to state a plausible claim under *Iqbal*. In Count Nine,  Plaintiffs broadly contend that Defendants treated Frank's LLC differently "from all identically situated individuals on the RTL." Doc. #65. p. 11-12 (¶ 51).   They fail, however, to name any particular individuals on the RTL or to suggest on what grounds they were "identically situated."   Specifically, Plaintiffs fail to provide facts or circumstances to suggest that any other specific towing company possessed similar material traits and was hired by the City.  *See, e.g.*, *Sanchez v. City of Hartford*, 10 F. Supp. 2d 162, 169 (D. Conn. 1998) ("Conclusory allegations of selective treatment are not sufficient.  Rather, a plaintiff must allege purposeful and systematic discrimination by specifying instances in which [the] plaintiff was singled out for unlawful oppression in contrast to others similarly situated.") (internal quotations and citations omitted); *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir.1997) (employees are similarly situated when they are "similarly situated in all material respects"); *Emmerling,* 2010 U.S. Dist. LEXIS 130948, at *35-36  ("Any equal protection claim is grounded on a comparison between the treatment the state gives similarly situated individuals.");  *Spanierman*, 576 F. Supp. 2d at 307 ("[T]he level of similarity between plaintiffs and the persons with whom they compare themselves must be *extremely high*," such that the standard to determine whether another person's circumstances are similar to the plaintiffs must be whether they are "*prima facie* identical").

The only detail Plaintiffs provide about the "identically situated" individuals is that they were on the RTL, which is insufficient to claim that they were similar in "all material respects" to Frank's LLC.  Otherwise, all towing operators on the RTL would be materially similar to Frank's LLC,  regardless of their characteristics or performance.  For example, characteristics one might consider when hiring a towing service (*e.g.*, number and quality of tow trucks, driving records, hours of service, location of business) are not provided.  Moreover, no statistics or facts regarding hiring onto or termination from the RTL are given.

C.      **Supplemental Jurisdiction**

"It is axiomatic that when all federal claims are eliminated prior to trial, a federal court should decline to exercise jurisdiction over any remaining state law claims."   *DeLeon v. Little*, 981 F. Supp. 728, 742 (D. Conn.1997) (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988),[37] and *DiLaura v. Power Auth. of New York*, 982 F.2d 73, 80 (2d Cir.1992)); *B&M Service Station v. City of Norwich,* Nos. 2:91-CV-1027 (CFD), 3:93-CV-1782 (CFD) , 2000 WL 305981, at *10 (D. Conn. Feb. 25, 2000) (same).

Having presently determined that all federal claims should be dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice.  *See* 28 U.S.C. § 1367(a)*;[38] United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("if

---

In sum, Plaintiffs have failed to adequately plead the first requisite element of a selective enforcement  claim  *– i.e.*, that Frank's LLC was treated *differently from other similarly situated individuals.*   Accordingly, the Equal Protection "selective enforcement" claim in Count Nine fails to pass muster under *Iqbal*.

[37]In *Carnegie-Mellon University v. Cohill*, 484 U.S.343 (1988), the United States Supreme Court reaffirmed its previous "crafting of the pendent jurisdiction doctrine" in  *Mine Workers v. Gibbs*, 383 U.S. 715 (1966):

> Under *Gibbs*, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as *when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain,* the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. [383 U.S.] at 726-727, 86 S. Ct., at 1139.

484 U.S. at 350 (emphasis added).

[38]For the text of 28 U.S.C. § 1367(a), *see* footnote 9, *supra*.

the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").  Accordingly, the Court will dismiss the Amended Complaint in its entirety.

V.      **CONCLUSION**

Defendants' Motion to Dismiss (Doc. #74) shall be granted as to all counts of Plaintiffs' Amended Complaint.  Plaintiffs' First Amendment claims, as set forth in Counts One and Two,  are fatally flawed in that they involve speech by public employees that does not relate to any "matter of public concern."   *See Connick v. Myers*, 461 U.S. 138, 146 (1983).  As pled, Plaintiffs' Complaint in the 2007 Action (Doc. #1) solely describes the suspension of Plaintiffs' business from the RTL and not a pattern or practice of discriminatory terminations or police misconduct. As such, it involves only matters of personal interest and sets forth no facts or circumstances to implicate any political, social, or other concern to the community.  Plaintiffs' First Amendment claims thus pertain to unprotected speech and must, as a matter of law,  be dismissed.

Plaintiffs' Equal Protection claims in Counts Three, Four, and Nine also fail.  If framed as "class-of-one" claims, they are barred by *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 606-07 (2008), in that they allege arbitrary,  irrational, and malicious employment actions taken by an employer in a public employment context.

Moreover, if Plaintiffs' Equal Protection claims are alternatively construed as  "selective enforcement" claims, they remain fatally flawed.  Count Four, based on discriminatory retaliation for Plaintiffs' filing of the 2007 Action, "coalesces"  with Plaintiffs' First Amendment retaliation claims.  Because this Court has determined that the First Amendment retaliation claims fail as a matter of law, the corresponding  "selective enforcement" claim must necessarily fail.

36

With respect to Count Three, based on discriminatory removal from the RTL for criminal arrest, Plaintiffs' allegations of selective treatment are based on malicious intent.   The Second Circuit held in *Massi v. Flynn*, 353 F. App'x 658, 660 (2d Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 2404, 176 L.Ed.2d 924 (2010), that, in the absence of any allegation that Plaintiffs were discriminated against as members of a particular class, such a selective enforcement claim in the government employment context is barred by *Engquist*.[39]

Lastly, Plaintiff's allegations of "selective enforcement" in Count Nine are also based on "malicious intent" and are thus precluded by *Engquist*.   In that count, Plaintiffs seek recovery for Hale's malicious failure to place Frank's LLC on the RTL, thereby contesting a refusal to hire in a government employment context.  Discretionary hiring decisions of public employees fall squarely within the *Engquist* ban.

Furthermore, regardless of the preclusive effect of *Engquist*, Count Nine is facially implausible in that the allegations contained therein lack the requisite degree of factual pleading set forth in *Iqbal*, 129 S. Ct. at 1950.   Plaintiffs have failed to set forth sufficient factual content that there were "similarly situated" individuals from whom Frank's LLC was treated differently. *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).  Rather, Plaintiffs alleged that Frank's LLC was "identically situated" to individuals on the RTL without naming any such individuals who were "similarly situated" or specifying the "material respects" in which they were similar.

In sum, whether framed as "class of one" or "selective enforcement" claims, Plaintiffs Equal Protection Claims in Counts Three, Four, and Nine must all be dismissed.

---

[39]The Court further notes that, even in the absence of *Engquist*, Plaintiffs themselves defeat their own claim by noting that Sardo's Automotive was once removed from the RTL when representatives of Sardo's were arrested.

Having determined that all federal claims in this action must be dismissed, the Court declines to exercise supplemental jurisdiction to review the validity of the state law claims.  28 U.S.C. § 1367(a).  Accordingly, the state law claims will be dismissed without prejudice at this time. For all of the foregoing reasons, Defendants' Motion to Dismiss (Doc. #74) is hereby GRANTED. The Clerk is instructed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
       April 15, 2011


   */s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE